IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

McKENZIE FLYFISHERS, STEAMBOATERS

       Plaintiffs,

v.

BRUCE McINTOSH, SCOTT PATTERSON, and OREGON DEARTMENT OF FISH AND WILDLIFE.

       Defendants.

Case No. 6:13-cv-02125-TC

OPINION AND ORDER

COFFIN, Magistrate Judge:

Presently before the court is plaintiffs' McKenzie Flyfishers and Steamboaters ("McKenzie Flyfishers") Motion for Entry of Judgment and/or for Partial Reconsideration (ECF #133). For the reasons set forth below, plaintiffs' motion is denied.

DISCUSSION

Plaintiffs move the court to enter judgment denying its Motion for Summary Judgment and Injunctive Relief (ECF #73) and granting defendant's Motion for Summary Judgment (ECF #87). Plaintiffs also

1 - OPINION AND ORDER

move the court to reconsider its Opinion and Order of March 13, 2015 (ECF #130).

Specifically, plaintiffs appear to argue that, pursuant to Rules 54(c), 58(d), and 60(b), because of newly discovered evidence, this court should reconsider its Opinion and Order of March 13, 2015 and during the time period before the National Marine Fisheries Service (NMFS) approves a Hatchery and Genetics Management Plan (HGMP) for the McKenzie Hatchery, the court should enter judgment that "state[s] that [defendant] shall use a rolling three-year average beginning in 2018 to calculate [proportion of hatchery-origin spawning (pHOS)] in the McKenzie River basin, and achieve ten percent or less pHOS by 2020." Pl.s' Mot. for Entry of J. and/or for Partial Recons. 2 (citing Fed. R. Civ. P. 54(c), 58(d), and 60(b)). Plaintiffs also argue that defendant's "HGMP is unclear as to what parts of the McKenzie River basin [defendant] will use to calculate pHOS" and assert for the first time on its instant motion that the court should state in its Opinion that pHOS should "be calculated in the McKenzie basin as a whole, excluding the areas above Cougar Dam and Trail Bridge Dam." Id.

Plaintiffs premise their arguments on a theory that "if there is no deadline to meet the pHOS standard, [defendant] has no immunity from liability for incidental take." Pl.s' Reply to Def.'s Opp'n to Mot. for J. and/or for Partial Recons. 2 (citing

Or. Natural Res. Council v. Allen, 476 F.3d 1031, 1039 (9th Cir. 2007).

Under Rule 58(d), a party may request that judgment be "set out in a separate document." Fed. R. Civ. P. 58(d). A judgment should "grant the relief to which each party is entitled." Fed. R. Civ. P. 54(c). Further, the court may reconsider any order for, among other reasons, "newly discovered evidence," and "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(2).

In this court's Opinion and Order of March 13, 2015, it found that defendant was in compliance with RPA 6.1.4 because it could release only the remaining 604,750 smolts it had into the McKenzie River basin in 2015, some 182,250 fewer than NMFS expressly stated in its April 16, 2014 letter[1] would satisfy the alternative in RPA 6.1.4. ECF #130; 15.

However, this court also noted that "management of the program is a work in progress that implicates a number of variables" and after the use of a functional sorter at the Leaburg Dam was determined to be infeasible, the goal of meeting a ten percent or less pHOS "must be achieved by management practices that require

---

[1] NMFS's April 16, 2014 letter states that "an 8.5 percent reduction in the number of hatchery spring Chinook salmon smolts that are annually released into the McKenzie River," or 74,000 smolts, from 861,000 to 787,000, beginning in 2015, the benefits of which "will commence in 2018," "satisf[ies] the alternative in RPA action 6.1.4 to reduce the number of hatchery fish on the natural spawning grounds." ECF #130; 13-14 (citing Decl. of Steven Marx in Supp. of State Def.'s Cross-Mot. for Summ. J. and Opp'n to Pl.s' Mot. for Summ. J. 145-46).

3 - OPINION AND ORDER

greater patience." Id. at 17-18. This court also stated that "although there is an active BiOp, RPA, and ITS in place through 2023," and despite the fact that "several HGMPs have been submitted to NMFS, including the Willamette HGMP (ODFW 2003, 2004a, 2005a, 2007a, 2008a, 2008b)" and the 2014 McKenzie Spring Chinook Salmon HGMP, "there is not currently an active HGMP in place." Id. at 11 (citing Def.'s Ans. to First Am. Compl. for Decl. and Inj. Relief ¶ 38).

Consequently, this court found that although defendant was in compliance with RPA 6.1.4, pursuant to RPA 6.1-6.1.1 and 6.2.1-6.2.2, defendant was still required to implement the actions described in the aforementioned HGMP's once adopted by NMFS. Id. (citing RPAs 6.1-6.1.1; 6.2.1-6.2.2 at AR035180-86). Accordingly, this court denied Plaintiffs' Motion for Summary Judgment and Injunctive Relief (ECF #73) and granted Defendant's Cross-motion for Summary Judgment (ECF #87), but withheld judgment until defendant consulted with NMFS to establish a time frame to achieve a ten percent or less pHOS and submitted that deadline to the court for approval.

Pursuant to this court's Order, defendant consulted with NMFS and submitted an HGMP that outlined the process it would use to achieve a ten percent or less pHOS by 2020 based on a three-year rolling average from 2018 to 2020. Notice of State Def.'s Conferral with NMFS, 5. On April 6, 2015, NMFS advised defendant

4 - OPINION AND ORDER

that its proposed HGMP was "sufficient" to begin the formal consideration process, but "for public review and efficiency purposes," the consideration process would not begin until after the Army Corps of Engineers (Corps) "submits proposed HGMPs for the three other Willamette River spring Chinook salmon hatcheries on the Willamette River, and NMFS finds those proposed HGMP's sufficient." Id. at 5 (citing Notice of State Def.'s Conferral with NMFS, Ex. 2; 1). Moreover, NMFS's April 6, 2015 letter states that it and defendant "discussed and agreed" that it "makes sense" to wait for the Corps to submit three additional HGMPs before NMFS begins the formal consideration process of defendant's HGMP. Id.

Here, this court found that pursuant to NMFS's April 16, 2014 letter, so long as defendant releases no more than 787,000 smolts per year into the McKenzie River basin defendant would be in compliance with RPA 6.1.4 and, by extension, the 2008 BiOp and its incorporated ITS until such time that an HGMP gets approved and supercedes RPA 6.1.4 or until a pHOS of ten percent or less is achieved. Consequently, because an HGMP has not yet been approved, plaintiffs' argument that this court should reconsider its Opinion and Order of March 13, 2015 because of "newly discovered evidence" is without merit because until an HGMP is approved, there is no new evidence to consider.

Additionally, plaintiffs' argument that "if there is no deadline to meet the pHOS standard, [defendant] has no immunity

5 - OPINION AND ORDER

from liability for incidental take" is flawed because plaintiff misstates the holding in Oregon Natural Resources Council v. Allen. Specifically, the court in Oregon Natural Resources Council held that after the partial revocation of a BiOp, the remaining ITS that authorized the taking of all northen spotted owls associated with a timber harvest was invalid because "(1) the withdrawal of a portion of the BiOp leaves the [ITS] without an underlying factual predicate; (2) the [ITS] presents a non-numerical measure of take without explaining why no number was provided; and (3) the [ITS] sets a measure of take that does not allow for reinitiation of consultation." Or. Natural Res. Council, 476 F.3d 1032-33. Consequently, nothing in that case addresses the imposition of liability when there is no deadline to meet a pHOS standard. Moreover, this court can find no legal authority to support such a proposition. Accordingly, this court declines to insert terms from defendant's unapproved HGMP into its Opinion that would require defendant to do more than NMFS's April 16, 2014 letter, and by extension, RPA 6.1.4 requires.

Moreover, because the HGMP is not yet binding on defendant, plaintiffs' argument that this court should clarify in its Opinion "what parts of the McKenzie River basin [defendant] will use to calculate pHOS," is not ripe for adjudication and is, therefore, rejected.

6 - OPINION AND ORDER

Accordingly, plaintiffs' Motion for Entry of Judgment and/or for Partial Reconsideration (ECF #133) is DENIED. However, defendant's obligation under RPA 6.1.4 to releases no more than 787,000 smolts per year into the McKenzie River basin until a pHOS of ten percent or less is achieved, is distinct from its obligation under RPA 6.1-6.1.1 and 6.2.1-6.2.2 to implement the actions described in the Willamette and McKenzie Spring Chinook Salmon HGMPs once approved by NMFS. However, the record reveals that although seven HGMPs have been submitted over that past dozen years that would address defendant's management practices of the McKenzie Hatchery, NMFS has not approved any of them[2]. Moreover, as previously stated, defendant and NMFS "discussed and agreed" that it "makes sense" to wait for the Corps to submit three additional HGMPs before NMFS begins the formal consideration process of the HGMP that defendant recently submitted.

Dovetailing with the HGMPs anticipated from the Corps is the fact that plaintiffs and the Corps have entered into a Consent Decree (ECF #65) in this case which provides, in pertinent part, ". . . that the court retain jurisdiction to oversee compliance with the terms and conditions of this decree, and to resolve any

---

[2] In its Answer (ECF #8) to Plaintiffs' Amended Complaint (ECF #21), defendant admitted that NMFS had not approved an HGMP for the McKenzie Hatchery and reserved the right to inform the court if NMFS approved an HGMP while the case was ongoing. Def.'s Ans. to First Am. Compl. for Decl. and Inj. Relief ¶38. On the date of this Opinion and Order, defendant has not indicated that NMFS has approved an HGMP.

7 - OPINION AND ORDER

motions to modify or otherwise change any of the terms . . . The court's continuing jurisdiction shall terminate <u>on the date that NMFS approves an HGMP for the McKenzie River Hatchery</u> . . ." (emphasis supplied).

Accordingly, although I deny plaintiffs' Motion for Summary Judgment and Injunctive Relief (ECF #73) and grant defendant ODFW's Motion for Summary Judgment (ECF #87), since I am retaining jurisdiction in any event pursuant to the Consent Decree (ECF #65) until NMFS approves an HGMP, and since ODFW has agreed to wait for the Corps to submit additional HGMPs before NMFS begins the formal consideration process of ODFW's latest proposed HGMP, the court declines to enter final judgment at this time. Rather than fragment the case and make the matter more convoluted, I intend to monitor the progress of the parties as they interact with NMFS to obtain approval of one of the pending HGMPs. Defendant is ordered to provide the court with a report regarding the status of the pending HGMPs before NMFS within ninety days of the date of this Order and to provide status updates every ninety days thereafter until NMFS approves an HGMP.

IT IS SO ORDERED.

Dated this 26th day of May 2015.

_____
THOMAS M. COFFIN
United States Magistrate Judge

8 - OPINION AND ORDER