IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

McKENZIE FLYFISHERS,
STEAMBOATERS,

      Plaintiffs,

    v.

BRUCE McINTOSH, SCOTT PATTERSON,
OREGON DEARTMENT OF FISH AND
WILDLIFE, COL. JOSE AGUILAR, U.S.
ARMY CORPS OF ENGINEERS,

      Defendants.

Case No. 6:13-cv-02125-TC

OPINION AND ORDER

COFFIN, Magistrate Judge:

Presently before the court is plaintiffs' McKenzie Flyfishers et al. ("McKenzie Flyfishers") Motion for Attorneys' Fees and Costs (ECF 138). For the reasons stated below, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

On December 2, 2013, plaintiffs filed suit against defendants, the Army Corps of Engineers (the "Corps") and Bruce McIntosh et al. ("ODFW" or "state defendants"), under the Endangered Species Act (ESA). Pl.s' First Am. Compl. ¶ 20.

1 – OPINION AND ORDER

Plaintiffs asserted the Corps' ownership, and ODFWs' operation, of the McKenzie Hatchery and Cougar Dam violated the ESA due to adverse effects on wild spring Chinook salmon. Frost Decl. ¶ 9.

The parties attended settlement conferences on June 19, 2014, and July 17, 2014, which led to a Consent Decree being proposed that would dismiss all claims against the Corps and entitle plaintiffs to reasonable attorneys' fees and costs under ESA § 11. ECF 45, 49, 52, 65. On August 22, 2014, the Corps informed plaintiffs that the Consent Decree had been approved. ECF 139-2 at 11. The Consent Decree was filed on August 26, 2014, ECF 52, and signed by this court on September 30, 2014. ECF 65.

On October 13, 2014, plaintiffs sent the Corps an offer to settle attorneys' fees and costs. Oliphant Decl. ¶ 4. Two weeks later, the Corps emailed plaintiffs a counteroffer. Id. ¶ 6. On June 15, 2015, plaintiffs responded and on July 2, 2015, the Corps replied. Id. ¶¶ 7-8. Plaintiffs confirmed receipt of the Corps' reply the on July 3, 2015. Id. On August 28, 2015, plaintiffs filed the instant motion seeking $215,586.83 in attorneys' fees and costs, but did so without first conferring with the Corps. Pl.s' Mot. for Attorneys' Fees and Costs 8.

The Corps responded by arguing that plaintiffs "filed the instant motion incorrectly representing that they 'conferred,'" in violation of Local Rule 7-1, and should be awarded no more

than $113,994.80 in fees and costs.  Corps' Opp'n to Pl.s' Mot. for Attorneys' Fees 10.  Plaintiffs subsequently conceded that they "should have . . . conferred before filing this motion," but argued that "had the Corps' response to the motion been that it was premature because the Corps still wanted to discuss settlement, [it] would have promptly withdrawn the motion, and continued the settlement discussions."  Pl.s' Reply to Corps' Opp'n 10.  Plaintiffs also increased their request for fees and costs to $226,972.37[1] to compensate for work performed replying to the Corps' response.  Id.

## STANDARD OF REVIEW

The ESA provides that a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."  16 U.S.C. § 1540(g)(4).  Because the fee shifting provisions of the ESA constitute partial waivers of sovereign immunity, the waivers "must strictly be construed in favor of the United States."  Ardestani v. INS, 502 U.S. 129, 137 (1991). Attorney fee awards should be calculated using the "lodestar"

---

[1] Plaintiffs' seek only $223,804.37 in the conclusion or their Reply.  Pl.s' Reply to Corps' Opp'n 10.  However, this amount does not include plaintiffs' request for $3,168 to compensate Jens Schmidt, Liam Sherlock, and Peter Lacy for the time they spent "supporting plaintiffs' motion and reply."  Id. at 9. Because plaintiffs' included the request for $3,168 in the body of their Reply, this court adds this amount to the misstated total sought by plaintiffs.

method.    Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.
4 (9th Cir. 2001).    The lodestar is calculated by multiplying
the number of hours an attorney reasonably expended by a
reasonable hourly rate.    Id.    Plaintiff carries the burden of
proving the lodestar.    Pa. v. Del. Valley Citizens' Council for
Clean Air, 478 U.S. 546, 563 (1986).

The court may adjust the lodestar downward "if the award
does not accurately reflect the time and labor required by the
litigation."    Hager v. Karhanechin, 317 F. App'x 610, 613 (9th
Cir. 2008) (internal quotations omitted).    However, in doing so,
the court must give a "concise but clear" explanation of how it
arrived at the amount.    Gates v. Deukmejian, 987 F.2d 1392, 1398
(9th Cir. 1992).    The court may also adjust the lodestar upward
in "rare" or "exceptional" cases.    Delaware Valley, 478 U.S. at
565.    However, there is a strong presumption that the lodestar
figure represents is a reasonable fee.    Id.; Miller v. L.A.
Cnty. Bd. Of Educ., 827 F.2d 617, 621 (9th Cir. 1987).

## DISCUSSION

Plaintiffs seek $215,134 in attorneys' fees for work
performed by Peter Frost, John Mellgren, and David Becker;
$7,460 for the services of two experts, Ted Labbe and Dr. Gordon
Luikart; $3,168 for the services of Jens Schmidt, Liam Sherlock,
and Peter Lacy for time spent "supporting plaintiffs' motion and
reply;" and $1,210.37 in general case costs.    Pl.s' Reply to

Corps' Opp'n 9-10.

The Corps objects to plaintiffs' request on the following grounds: (I) the hourly rates claimed by plaintiffs' attorneys are excessive; (II) plaintiffs seek fees for non-compensable tasks; (III) the services provided and the fees charged by the experts were inadequately described; and (IV) the costs plaintiffs seek were inadequately described and are, therefore, not recoverable. Corps' Opp'n 2-10. The Corps argues that plaintiffs should receive no more than $113,994.80. Id. at 10.

## I.    Hourly Rates Charged by Plaintiffs' Attorneys

Plaintiffs seek the following hourly rates for their attorneys: (1) $350 for work performed by Mr. Frost in 2012 and 2013 and $375 for 2014 and 2015; (2) $355 for work performed by Mr. Becker in 2013 and $365 for 2014; and (3) $200 for work performed by Mr. Mellgren in 2012 and 2013 and $215 for 2014 and 2015. Pl.s' Mot. for Attorneys' Fees and Costs 8.

The Corps asserts that plaintiffs' attorneys should be awarded an hourly rate commensurate with the 75th percentile of attorneys' fees charged in the Lower Willamette Valley as stated in the Oregon State Bar (OSB) 2012 Economic Survey. Corps' Opp'n at 3. Specifically, the Corps argues that: (A) Mr. Frost, who had 20-23 years of experience during the relevant time period, should be awarded $228 per hour for work performed in 2012 and $300 for 2013-2015; (B) Mr. Becker, who had 13-14 years

of experience during the relevant time period, should be awarded $278 per hour for work performed in 2013 and 2014; and (C) Mr. Mellgren, who had 1-2 years of experience during the relevant time period, should be awarded $169 per hour for work performed from 2013 through 2015.    Corps' Opp'n at 3 (citing the OSB 2012 Economic Survey at 29).

"The burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stetson, 465 U.S. 886, 895 n. 11 (1984).    The relevant community is generally the "forum in which the district court sits." Camacho v. Bridgeport Fin., 523 F.3d 973, 979 (9th Cir. 2008).

The OSB Economic Survey is the "best evidence" on prevailing rates for various forums in Oregon and is afforded "significant weight" in determining reasonable rates.    Atl. Recording Corp. v. Andersen, 2008 WL 2536834, at *14 (D. Or. Jun 24, 2008).    Fee petitions filed in this court must "address the Economic Survey and provide justification for requested hourly rates higher than reported by the Survey."    LR 54-3 Practice Tip.    However, courts in this district have held that the Economic Survey "accounts only for the attorney's years of experience rather than important factors such as skill and

reputation" and "includes hourly rates for attorneys who are part-time due to lack of legal work . . . result[ing] in an underestimation of the prevailing market rate for skilled full-time attorneys with good reputations." Miranda v. City of Cornelius, Civ. No. 04-CV-421-AA (D. Or. March 8, 2006) (ECF 63 at 5-6). Moreover, the Ninth Circuit has held that "rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients . . . ." Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945-46 (9th Cir. 2007) (emphasis supplied).

If the requested rate is opposed, the challenger "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Deukmejian, 987 F.2d at 1397-98 (emphasis supplied).

### A. Mr. Frost

Plaintiffs argue that Mr. Frost qualifies for the rates he seeks because he is "'an attorney of high caliber,'" Pl.s' Reply 5 (quoting Schmidt Decl. ¶ 7), and "in addition to being a full-time attorney with a good reputation, two law schools with highly-regarded environmental law programs have chosen [him] to teach environmental law as an adjunct" and he "has also taught

CLE courses to attorneys and law students on many environmental law subjects." Id. (quoting Frost Decl. ¶¶ 2-3, 6).

In support of Mr. Frost's hourly rate, plaintiffs also submit as evidence: (a) that Mr. Frost was awarded $350 per hour in 2012 and 2013 in Cascadia Wildlands v. BLM, 987 F. Supp. 2d 1085, 1098 (D. Or. 2013), a Eugene case; (b) a declaration from Mr. Schmidt, the president of a Eugene law firm who is "familiar with the fair market value of the services of attorneys in Eugene, ranging from new associates to experienced partners," was "responsible for setting hourly rates for all attorneys in the firm," "is familiar with Mr. Frost and his work," has been "an attorney in 158 cases in this court," including several environmental cases, and opines that Mr. Frost's requested rates are "reasonable, and reflect fair market value in Eugene for an attorney of his skill and experience;" (c) court orders from contested fee proceedings in cases tried in Seattle and San Francisco, where Mr. Frost was awarded between $410 and $425 per hour for work performed between 2008 and 2012; and (d) the Economic Survey to demonstrate that environmental attorneys in Portland, who are paid in the 75th percentile, receive the increased sum of $396 per hour. Id. at 4-5 (quoting Schmidt Decl. ¶¶ 5, 7).

The Corps argues that Mr. Frost should be awarded, $228 per hour for work performed in 2012 and $300 for 2013 through 2015,

commensurate with the 75th percentile of what all attorneys in the Lower Willamette Valley charge as stated in the Economic Survey, because: (a) Mr. Schmidt is not qualified to opine as to rates for environmental lawyers in Eugene; and (b) the fees paid for work performed in Portland, Seattle, and San Francisco are not persuasive here because Portland "categorically has the highest rates in Oregon" and Seattle and San Francisco are "notoriously expensive" and, therefore, it would be "unreasonable" to compare these rates to those charged in the Lower Willamette Valley. Corps' Opp'n at 4-5.

Here, plaintiffs filed the case in the Eugene division. Thus, the relevant community is the "Lower Willamette Valley" in the OSB Economic Survey. OSB 2012 Economic Survey 29-32. The Economic Survey, however, does not provide data for practitioners of environmental law in the Lower Willamette Valley. Id. at 32. Rather, the Survey supplies data only for practitioners of environmental law in Portland, Tri-County, the Upper Valley, and Oregon generally, id. at 32, as well as data pertaining to the fees charged by all attorneys in different forums throughout the state, based on the length of time they have practiced any kind of law, and regardless of their skill, reputation, or status as a full or part-time practitioner. Id. at 29. Plaintiffs rely on the former category of data, while the Corps relies on the latter. Plaintiffs, however, also

9 – OPINION AND ORDER

submitted significant evidence of Mr. Frost's skill and reputation, which this court finds persuasive.

Specifically, this court finds Mr. Schmidt's declaration persuasive because he is familiar with Frost's work, as well as the "fair market value of the services of attorneys in Eugene." Although Mr. Schmidt did not enumerate each area of law he is familiar with, he did state that he has tried 158 cases in this court, including several environmental cases. Although the Corps argues that Mr. Schmidt's familiarity with the rates charged in this forum does not extend to the specialty of environmental law, it submits no evidence to support this assertion. Gates, 987 F.2d at 1397-98. Accordingly, this court finds that Mr. Schmidt has familiarity with the fair market value of environmental legal services in this forum. This court also finds persuasive plaintiffs' evidence that Mr. Frosts has taught environmental law to attorneys and students at CLE seminars and at two law schools with highly-regarded environmental law programs. Finally, this court finds persuasive plaintiffs' evidence that Mr. Frost was awarded $350 per hour for environmental legal work performed in this forum in 2012 and 2013 in Cascadia Wildlands, despite his rates being contested in that case.

Given that the Economic Survey's figures lack consideration for Mr. Frost's skill and reputation, which plaintiffs provided

substantial evidence of, they are of limited value in the analysis of Mr. Frost's fee request. Miranda, Civ. No. 04-CV-421-AA (ECF 63 at 5-6); Welch, 480 F.3d at 945-946. Accordingly, this court finds that Mr. Frost has sufficient experience and reputation in the environmental law arena to justify the enhanced fees plaintiffs seek in their instant motion. As such, Mr. Frost is entitled to $350 per hour for work performed in 2012 and 2013 and $375 per hour for work performed in 2014 and 2015.

However, because Mr. Frost has a high level of experience, but nevertheless violated Local Rule 7-1 by admittedly failing to confer with opposing counsel before submitting the instant motion, I find that in the circumstances of this case, a ten percent reduction of all hours spent by Mr. Frost after confirming receipt of the Corps' counteroffer on July 2, 2015 is warranted to offset the additional time spent by Mr. Frost litigating the merits of plaintiffs' instant motion, which likely could have been refined had Mr. Frost conferred with the Corps as Local Rule 7-1 requires. See Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008) "the district court can impose a small reduction, no greater than 10 percent — a 'haircut' — based on its exercise of discretion and without a more specific explanation." In sum, this court deducts 5.2

hours, or $1,950,[2] from Mr. Frost's requested fees in 2015.

   **B. Mr. Becker**

   In support of Mr. Becker's hourly rate, plaintiffs submit as evidence: (1) that Mr. Becker has litigated principally in federal court for the past fifteen years after graduating from law school in 1999 and later earning an LL.M. in 2006; (2) a declaration from Mr. Schmidt stating that Mr. Becker's rates reflect the fair market value in Eugene; (3) a declaration from Peter Lacy, a Portland litigator who has handled environmental cases in Eugene, is "very familiar" with Mr. Becker's work, and stated that Mr. Becker is "exceptionally good" and "well worth" the hourly rates he seeks; and (4) fee awards Mr. Becker has received in other cases that are comparable to what Mr. Becker seeks here.[3]   Pl.s' Mot for Attorneys' Fees 6; Pl.'s Reply to

---

[2] Mr. Frost originally sought 52.6 hours for work performed after July 2, 2015.   Second Frost Decl. 12-4.   Mr. Frost, however, later omitted 0.8 of those hours.   Id.   Thus, 51.8 hours remain for the purposes of this calculation.   Ten percent of 51.8 is 5.18, which rounds to 5.2.   This court, therefore, multiplies Mr. Frost's hourly rate of $375 for 2015 by 5.2 and arrives at a total reduction of $1,950.

[3] Plaintiffs assert that Mr. Becker was awarded hourly rates of: (1) $400 for work performed in 2015 in Columbia River Keepers v. U.S. Army Corps of Eng'rs, 2015 WL 2095223, at *6 (D. Or. May 5, 2015), a Portland case; (2) $335 for work performed in 2011, $350 for 2012, $365 for 2013, and $380 for 2014 in Native Fish Soc'y v. NMFS, 2014 WL 7331039, at *3 (D. Or. Dec. 19, 2014), a Portland case; (3) $315 for work performed in 2009 in ONDA v. Locke, 2010 WL 56111, at *3 (D. Or. Jan. 5, 2010), a Portland case; and (4) $335 for work performed in 2011, $350 for 2012, and $365 for 2013 in ONDA v. Vilsack, 2013 WL 3348428 at *5 (D. Or. July 2, 2013), a Pendleton case.   Second Becker Decl. ¶ 4.

Corps' Opp'n 5.

The Corps argues that Mr. Becker should be awarded a reduced rate of $278 per hour for work performed in 2013 and 2014, commensurate with the 75th percentile of what all attorneys in the Lower Willamette Valley charge as stated in the Economic Survey, because: (a) Mr. Schmidt was not personally familiar with Mr. Becker's work and has no knowledge of the rates charged by environmental lawyers; and (b) Mr. Becker failed to declare that he has actually received these rates from a client before. Corps' Opp'n 4.

Here, plaintiffs provided declarations from two attorneys stating that Mr. Becker's rates were reasonable. Because one of the two attorneys, Mr. Lacy, has experience as an environmental litigator in the same forum, is very familiar with Mr. Becker's work, and opined that Mr. Becker is well worth the hourly rates he seeks, this court finds Mr. Lacy's endorsement persuasive, such that it need not address the Corps' argument that Mr. Schmidt's endorsement was not.

Plaintiffs also present evidence that Mr. Becker has received fee awards in four cases that are in the range of what plaintiffs seek here. However, because three of these cases took place in Portland, where attorneys charge rates that are categorically higher than the rates charged by their Eugene counterparts, OSB 2012 Economic Survey at 29-30, this court

13 – OPINION AND ORDER

finds these three examples unpersuasive. This court, however, finds Mr. Becker's fee award of $350 per hour in 2012[4] in the fourth case cited by plaintiffs, Vilsack, persuasive because that case took place in Pendleton, where attorneys charge rates that are categorically lower than the rates charged by their Eugene counterparts. Id. As such, this court finds that the hourly rates sought by plaintiffs for Mr. Becker's work, of $355 for work performed in 2013 and $365 for 2014, reasonable. Accordingly, plaintiffs' fee request with respect to Mr. Becker's hourly rate is granted.

### C. Mr. Mellgren

In support of Mr. Mellgren's hourly rate, plaintiffs submit as evidence that: (1) during law school, Mr. Mellgren obtained a Statement of Completion in Environmental and Natural Resources Law, he was a fellow in the Environmental and Natural Resources Law Program, he was a teaching assistant at the University of Oregon School of Law, and he worked as a law clerk at an environmental law firm and in the Office of the Oregon Attorney General where he worked exclusively on environmental cases; (2) after graduating law school in 2011, Mr. Mellgren began working

---

[4] Although plaintiffs claim the Mr. Becker received $365 per hour for work performed in Vilsack in 2013, this court can find no evidence of this. See Vilsack, Civ. No. 07-CV-1871-HA (ECF #667-1 at 38) showing that Mr. Becker's last billing entry occurred on December 19, 2012; See also Vilsack, Civ. No. 07-CV-1871-HA (ECF #667 at 3) Mr. Becker's declaration sought fees for 2009-2012 only.

at the Western Environmental Law Center in November 2011; (3) Mr. Mellgren received $200 per hour in 2012 for work he performed in Native Fish Soc'y, 2014 WL 7331039; and (4) Mr. Schmidt, as well as Liam Sherlock, a practitioner of environmental law and shareholder in a Eugene law firm, declared that Mr. Mellgren's hourly rates are reasonable. Pl.s' Mot. for Attorneys' Fees and Costs 5-6; Pl.s' Reply to Corps' Opp'n 5.

The Corps argues that: (a) Mr. Schmidt's opinion is not persuasive because he "does not know" Mr. Mellgren "at all" and has based his opinion solely on descriptions of Mr. Mellgren's experience that Mr. Mellgren himself provided to Mr. Schmidt; and (b) Native Fish Soc'y cannot establish rates in this forum because that case was litigated in Portland where rates are categorically higher, and also because the $200 Mr. Mellgren received in that case "was virtually identical to the Economic Survey's $198 rate for the 75th percentile for Portland attorneys with his experience." Corps' Opp'n 4 (quoting Native Fish Soc'y 2014 WL 7331039 at *3).

Here, this court finds that Mr. Mellgren gained a significant amount of clinical and legal research experience and began to develop a specialized knowledge base in environmental law while in law school. This is confirmed by the declarations of Mr. Schmidt who has reviewed some of Mr. Mellgren's work, and Mr. Sherlock, who has worked alongside Mr. Mellgren and has

15 – OPINION AND ORDER

personal knowledge of his work.    However, Mr. Mellgren posted his first billing entry in this case on October 23, 2011, less than one year after starting his professional legal career with the Western Environmental Law Center in November 2011.    Mellgren Decl. Ex. A.    Because Mr. Mellgren had less than one year of professional experience at the outset of this case, this court cannot conclude that Mr. Mellgren developed a specialized skillset and reputation in such a short time to justify awarding him fees for work performed in Eugene that exceed the Economic Survey's recommended hourly rate of $198 that the 75th percentile of Portland attorneys with 0-3 years of experience receive.    OSB Economic Survey at 29.

Nevertheless, this court finds that evidence supports a fee award greater than the Economic Survey's recommended hourly rate of $169 that the 75th percentile of Eugene attorneys with 0-3 years of experience receive.    Id.    Therefore, this court relies on the recent holding in Cascadia Wildlands, a Eugene case that analyzed Mr. Mellgren's fee request of $200 per hour when the case was filed within three months of Mr. Mellgren being admitted to practice.    Cascadia Wildlands, 987 F. Supp. 2d at 1098.    The Court in Cascadia Wildlands held that because Mr. "Mellgren concentrated on environmental law during school, and earned accomplishments and accolades for such work, [he] evinced at least some specialized knowledge of this area of law" and,

16 – OPINION AND ORDER

accordingly, "is awarded fees at $180 per hour." Id.

Because the facts of this case are remarkably similar to those in Cascadia Wildlands, namely that both cases concern the same attorney, forum, specialty of practice, and a fee request for work that Mr. Mellgren began performing during his first year of practice, this court similarly awards Mr. Mellgren $180 per hour for all work performed in this case. In doing so, this court recognizes Mr. Mellgren's request for a rate increase to $215 per hour for work performed in 2014 and 2015, his third and fourth years of practice. Nevertheless, because the majority of Mr. Mellgren's work on this case took place during his first three years of practice between 2012 and 2014,[5] and the Economic Survey combines the billing rate of attorneys with 0-3 years of practice, I find that no further fee escalation is warranted.

## II.  Fees Charged for Tasks Performed

Plaintiffs seek the following hours for work performed by their attorneys: (1) 162.4 hours for work performed by Mr. Frost in 2012 and 2013 and 401.2 hours for 2014 and 2015, totaling 563.6 hours for Mr. Frost; (2) 12.7 hours for Mr. Mellgren; and (3) 5.9 hours for work performed by Mr. Becker in 2013 and 8.6 hours for 2014, totaling 14.5 hours for Mr. Becker. Pl.s' Reply

---

[5] As stated above, Mr. Mellgren graduated from law school in 2011 and began working at the Western Environmental Law Center in November 2011. With the exception of the 0.2 hours that Mr. Mellgren billed in 2015, all Mr. Mellgren's hours were billed on this case prior to October 4, 2014. Mellgren Decl. Ex. A.

to Corps' Opp'n 10.

The Corps argues that plaintiffs improperly seek fees for "non-compensable tasks," such as: (A) duplicative expenditures; (B) clerical tasks; (C) time not sufficiently connected to the litigation; and (D) "block-billed" time.   Corps' Opp'n at 5-9.

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." U.S. v. $28,000 in U.S. Currency, 802 F.3d 1100, 1107 (9th Cir. 2015) (internal quotations omitted).    Where the documentation of hours is inadequate, the district court may reduce the award accordingly. Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945-946 (9th Cir.2007).   "'The district court . . . should exclude from this initial fee calculation hours that were not reasonably expended.'"   $28,000 in U.S. Currency, 802 F.3d at 1107 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, (1983)).    "Hours not reasonably expended are those that are 'excessive, redundant, or otherwise unnecessary.'"   Id. at 1107-08 (quoting Hensley, 461 U.S. at 434); see also Chalmers v. Los Angeles, 796 F.2d 1205, 1211 (9th Cir. 1986) (district court determines numbers of hours reasonably expended in furtherance of the successful aspects of a litigation).

## A. Duplicative Expenditures

"The policy of this court is to reduce the hours where

more than one lawyer performed the same task." <u>Native Fish</u>
<u>Soc'y</u>, 2014 WL 7331039 at *3; see also <u>Taylor v. Albina County</u>
<u>Bank</u>, 2002 WL 31973738, at *4 (D. Or. Oct. 2, 2002)
("duplication of time must be excluded from a fee award." "An
example of duplicated effort [is] . . . when attorneys hold a
telephone or personal conference with another attorney."
"Reading an e-mail is simply another method of holding a
conference." "Good billing judgment mandates that only one
participant in the conference should bill that conference to the
client."); see also <u>Asia Pacific Agr. And Forestry Co. v. Sester</u>
<u>Farms, Inc.</u>, 2013 WL 6157263, *4 (D. Or. Nov. 22, 2013)

> (A party is certainly free to hire and pay as many
> lawyers as it wishes, but cannot expect to shift the
> cost of any redundancies to its opponent. Instead it
> can only shift the reasonable attorney fee expended.
> A fee that is 'not excessive' may still be
> unreasonable. When attorneys hold a telephone or
> personal conference, good 'billing judgment' mandates
> that only one attorney should bill that conference to
> the client, not both attorneys.

(quoting <u>Nat'l Warranty Ins. Co. v. Greenfield</u>, 2001 WL
34045734, *4 (D. Or. Feb. 8, 2001))).

Here, the record reveals that Mr. Frost and Mr. Becker both
billed time for the same conferences on January 9, February 5,
and November 5 2014; as well as on January 22 and 24, May 29,
August 15, and September 5, 12, 14, and 29, 2014.[6]  Becker Decl.,

---

[6] Mr. Becker billed 1.0 hours on Jan 9, 2013; 0.7 hours on
February 5, 2013; 0.3 hours on November 5, 2013; 0.2 hours on

Ex. A at 1-2; Second Frost Decl., Ex. A at 2-12.    Accordingly, because this time represents duplicating expenditures, this court deducts 2 hours from Mr. Becker's requested hours in 2013 and 3.9 hours from 2014.    <u>Native Fish Soc'y</u>, 2014 WL 7331039 at *3; <u>Taylor</u> 2002 WL 31973738, at *4; <u>Asia Pacific Agr. and Forestry Co.</u>, 2013 WL 6157263, at *4.

### B. Clerical Tasks

Clerical tasks are typically considered overhead expenses, are reflected in an attorneys' hourly billing rate, and are, therefore, not reimbursable as attorneys' fees.    <u>Inst. For Wildlife Protection v. U.S. Fish and Wildlife Service</u>, 2008 WL 4866063, *3 (D. Or. Nov. 5, 2008).    "Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." <u>Sterling Sav. Bank v. Sequoia Crossing, LLC</u>, 2010 WL 3210855, *7 (D. Or. Aug. 11, 2010).

Here, Mr. Frost included several time entries which consist of clerical tasks.    For example, Mr. Frost charged for sending emails, compiling information onto disks, formatting documents,

---

January 22, 2014; 0.3 hours on May 29, 2014; 0.6 hours on August 15, 2015; 1.1 hours on September 5, 2014; 0.4 and 0.2 hours on September 12, 2014; 0.7 hours on September 14, 2014; and 0.4 hours on September 29, 2014. Becker Decl., Ex. A at 1-2.

and downloading information.    Second Frost Decl., Ex. A at 1-13.
Recognizing this, Mr. Frost, attached a revised timesheet to his
second declaration that omitted between 0.1 and 0.3 hours from
all 36 time sheet entries that the Corps challenged.    Id.    This
court finds these omissions sufficient such that no further
deductions from Mr. Frost's fee request are necessary to remove
time spent performing clerical tasks.

### C.  Time Not Connected to the Litigation

The Corps argues that plaintiffs cannot recover fees for
time not sufficiently connected to the litigation, such as
"media contact," hours spent on unrelated Freedom of Information
Act (FOIA) lawsuits, time spent litigating against other parties
in the suit or opposing ODFWs' objections to the Consent Decree,
and hours billed after plaintiffs were told that the Consent
Decree had been approved on August 22, 2014.    Corps' Opp'n at 7-
9.    The Corps also seeks to have time Mr. Frost spent on October
21, 2012 and March 26, 2013 deducted because the entries "are so
vague as to be meaningless."    Id. at 8, note 3.

Time spent before filing a suit is compensable under fee-
shifting statutes.    Webb. v. Bd. Of Educ., 471 U.S. 234 (1985).
Moreover, courts in this district have held that tasks such as
"reviewing the administrative record, researching the applicable
law, identifying which claims [are] appropriate to assert, and
drafting the complaint . . . rank among the most important an

attorney performs in any litigation" and are, therefore, compensable." ONRC Fund v. Goodman, 2008 WL 4000442, *4 (D. Or. Aug. 25, 2008). Moreover, time spent in settlement efforts is also compensable. Sorenson v. Concannon, 161 F. Supp. 2d 1164, 1169 (D. Or. 2001).

However, "an award of attorneys' fees should not include amounts for contact with the media." Atl. Recording, 2008 WL 2536834, *11; see also Gates v. Gomez, 60 F.3d 525, 535 (9th Cir. 1995) (court "abuse[d] its discretion in awarding plaintiffs attorneys' fees for attending the . . . annual conference and for media contact."); see also Bonnichsen v. U.S., 2004 WL 2901204, at *9 (D. Or. Dec. 15, 2004) ("media contact is the kind[] of activit[y] that attorneys generally do at their own expense."). Finally, when faced with circumstances similar to those presented in this case, courts in this district have held that "plaintiffs should [not] recover an amount from the federal defendants for the prosecution of the state claim. Any such time and cost should be deducted from this court's award." Native Fish Soc'y, 2014 WL 7331039, at *3.

Here, this court rejects the Corps' argument that activities such as "client conferral," "project participation," "meeting with [client] board members re case strategy," and "meeting client board member re approval case," Oliphant Decl. 4-8, are activities unrelated to the successful litigation of

22 – OPINION AND ORDER

this case.   I also reject the Corps' argument that this court
should disallow all hours billed after plaintiffs were told that
the Consent Decree had been approved by the Corps on August 22,
2014.   As plaintiffs correctly assert, on August 28, 2014, the
Court ordered plaintiffs' dispositive motions due by September
19, 2014, ECF 54, and did not approve the Consent Decree until
September 30, 2014.   ECF 65.   Accordingly, this court finds that
it was reasonable for plaintiffs to continue working on their
opening motion during this time period.

This court finds, however, that Mr. Frost included several
time entries that consist of tasks not sufficiently related to
the litigation.   Chalmers, 796 F.2d at 1211.   For example, Mr.
Frost's timesheet includes time spent on "press" and "media"
relations,[7] matters specific to ODFW and other cases, and matters
not clearly linked to this case.   As such, this court deducts
that time from Mr. Frost's fee award in the following amounts:

- 10/16/12: 4.0 hours to "read DOJ dismissal doc in Sandy,"
  "read sandy amended notice," "Sandy: TC Thomas re: ODFW
  settlement offer."
- 1/10/13: 0.8 hours to "edit MFF newsletter piece."
- 2/13/13: 0.4 hours to "[r]ead WE Wash order re section 9
  dismissal re tribes . . . ."
- 2/15/13: 0.2 hours to "review Kaitlin email re draft PI
  brief, respond to settle order."
- 2/19/13: 0.8 hours to "TC Becker re PI review/edits [.2];

---

[7] Mr. Frost claimed to have "now omit[ted] the time he spent" on
media work.   Pl.s' Reply to Corps' Opp'n 8-9.   However, not all
time spent on media work was omitted.   This court, therefore,
lists the remaining disallowed media time with the other
disallowed time.

review conferral emails [.1]; TC Thomas re standing/bond declaration [.2] . . . ."

- 3/04/13: 0.3 hours for "TC TU re approval, retainer agreement terms . . . ."
- 3/07/13: 0.1 hours for "TC Mueller re TU representation."
- 3/18/13: 0.1 hours for "miscellaneous TC Mueller re TU rep."
- 3/22/13: 0.1 hours for "TC Mueller TU re representations . . . and respond to client query re Sandy hearing."
- 3/26/13: 0.2 hours for "miscellaneous review Frissell contract."
- 12/2/13: 0.9 hours[8] for "meeting client re press [.4]; review press documents, edit [.6] . . . ."
- 12/5/13: 0.6 hours to "[r]ead NMFS FOIA response . . ."
- 7/8/14: 0.1 hours[9] for "TC [state defendants' counsel] re ODFW request for production, our responses . . . ."
- 8/25/14: 0.3 hours[10] to "re-read ITS, notes, email Becker re provisions . . . email state attorneys re conferral on prospective motion . . . ."
- 10/1/14: 0.2 hours[11] to "review state's email to Judge Coffin . . . email to [state defendants' counsel] for conferral."
- 2/25/15: 0.2 hours to "confer Cedarwolf re representation, check retainer agreements . . . ."
- 7/7/15: 1.6 hours to "research CWA suit against COE re temperature."

Second Frost Decl., Ex. A at 1-6. In sum, this court deducts

8.4 hours from Mr. Frost's hours in 2012 and 2013 and 2.4 hours

---

[8] Mr. Frost already omitted 0.1 hours for media work on this billing entry. Second Frost Decl., Ex. A at 4. Thus, the court deducts only 0.9 of the 1.0 hours spent on media work.
[9] Mr. Frost already omitted 0.2 of the 0.3 disallowable hours. Second Frost Decl. Ex. A at 9. As such, the court disallows only 0.1 hours here.
[10] Mr. Frost already omitted 0.2 of the 0.5 disallowable hours. Second Frost Decl. Ex. A at 10. As such, this court disallows only 0.3 hours here.
[11] Mr. Frost already omitted .01 hours from this entry. Second Frost Decl. Ex. A at 10. However, this omission was to compensate for the clerical tasks as discussed above. See Pl.s' Reply to Corps' Opp'n at 8 ("Mr. Frost now omits one-tenth of an hour (or more) from all 36 entries on the Corps' list" of timesheet entries containing clerical tasks. This would include Mr. Frost's entry on 10/1/14.).

24 – OPINION AND ORDER

from his hours in 2014 and 2015 for time spent on tasks not connected to the litigation.

### D. Block Billed Time

The Corps argues that "Mr. Mellgren's 1.8 hours researching 'ODFW lawsuits' and 'nonprofit director liability'" are "block-billed" and should be disallowed. Corps' Opp'n at 8 (quoting Mellgren's Second Decl., Ex. A at 1). The Corps also argues that Mr. Mellgren's two "strategy" meetings on August 2, 2014 and September 15, 2014 that addressed the "next stages of litigation," and came after plaintiffs were told that the Consent Decree had been approved, should be disallowed.[12] Id.

Block billing several tasks at a time, with a lump sum of hours, "is in direct contravention of this court's instruction that members of the bar record time on particular individual tasks and support their fee petitions with a level of documentation that allows the court, and opposing counsel, to adequately review the reasonableness of the time spent on a single task." Atl. Recording, 2008 WL 2536834, at *9 (internal quotations omitted).

---

[12] As stated above, this court finds that it was reasonable for plaintiffs to continue working on their opening motion in the time period between finding out that the Corps had approved the Consent Decree on August 22, 2014 and the Court approving the Consent Decree on September 30, 2014. Moreover, Mr. Mellgren's entries from August 2, 2014 and September 15, 2014 were no longer block billed in his Second Declaration. As such, this court rejects the Corps' argument with respect to these entries.

25 – OPINION AND ORDER

Here, Mr. Mellgren's two entries from January 3 and 4, 2013 include time spent working on tasks related to this case, such as "phone call with Bruce Anderson re research for McKenzie Flyfishers" and "case research," but also include time for work that would be inappropriate to bill the Corps, such as "research for Bruce Anderson re ODFW lawsuits, nonprofit director liability." Second Mellgren Decl., Ex. A. Further, these two entries do not specify the amount of time spent working on each task. Rather, the entry from January 3, 2013 includes a lump sum entry of 0.5 hours and the January 4, 2013 entry provides the lump sum of 1.3 hours. Because the court cannot adequately review the reasonableness of the time spent on each task in each entry, and the entries contain work that would be inappropriate to bill to the Corps, this court disallows the full 1.8 hours Mr. Mellgren's hours in 2013 for these two block billed entries, Atl. Recording, 2008 WL 2536834, at *9, resulting in a total deduction of $324 from Mr. Mellgren's fee request.[13]

In sum, plaintiffs are granted $201,500 for the work of Mr. Frost,[14] $1,962 for the work of Mr. Mellgren,[15] and $3,100 for the

---

[13] 1.8 hours multiplied by Mr. Mellgren's hourly rate of $180 in 2013 yields a $324 reduction.

[14] As stated above, Mr. Frost will receive $350 per hour for work performed in 2012 and 2013 and $375 per hour for 2014 and 2015. Thus, a reduction of 8.4 hours from the 162.4 hours requested for Mr. Frost in 2012 and 2013 yields 154 hours, multiplied by the applicable hourly rate of $350, results in a total of $53,900 for 2012 and 2013. A reduction of 7.6 hours from the

work of Mr. Becker,[16] resulting in a total attorneys' fee award
of $206,562.

## III. Expert Fees

Plaintiffs seek $7,460 for the services of two experts, Ted
Labbe and Dr. Gordon Luikart. Pl.s' Reply to Corps' Opp'n 10.
Plaintiffs also seek $2,133 to pay Jens Schmidt, $450 to pay
Liam Sherlock, and $585 to pay Peter Lacy for the time they
spent "supporting the motion and reply." Id. at 9.

The Corps argues that "plaintiffs claim expert fees for Ted
Labbe to 'work up its dispositive motion,'" but this time should
be excluded because "no dispositive motion was filed against
[it]." Corps' Opp'n 9. Moreover, the Corps argues that there
is no indication of the dates that Mr. Labbe and Dr. Luikart's
work took place, the nature of the tasks performed, or how the

---

401.2 hours requested for Mr. Frost in 2014 and 2015 yields
393.6 hours in 2014 and 2015, multiplied by the applicable
hourly rate of $375 yields a total of $147,600 for 2014 and
2015. The sum of these two amounts is $201,500.
[15] As stated above, Mr. Mellgren will receive $180 per hour for
all work performed on this case. A reduction of 1.8 hours from
the 12.7 hours requested for Mr. Mellgren results in 10.9 hours
remaining. 10.9 hours multiplied by the applicable hourly rate
of $180 yields a total of $1,962.
[16] As stated above, Mr. Becker will receive $355 for work
performed in 2013 and $365 for 2014. A reduction of 2 hours
from the 5.9 hours requested for Mr. Becker in 2013 results in
3.9 hours, multiplied by the applicable hourly rate of $355,
results in a total of $1,384.50 for 2013. A reduction of 3.9
hours from the 8.6 hours requested in 2014 results in 4.7 hours,
multiplied by the applicable hourly rate of $365, resulting in a
total of $1,717.50 for 2014. The sum of these two amounts is
$3,100.

tasks relate to the Corps.  Id. at 9-10.

Here, as an initial matter, the Corps does not challenge the fees plaintiffs seek for the services of Jens Schmidt, Liam Sherlock, or Peter Lacy.  The court finds these fees to be reasonable and, therefore, grants plaintiffs' request of $2,133 for the services of Jens Schmidt, $450 for Liam Sherlock, and $585 for Peter Lacy.  See 16 U.S.C. § 1540(g)(4) (a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."); see also Guerrero v. Cummings, 70 F.3d 1111, 1112 (9th Cir. 1995) (Time spent on a fees motion and reply is recoverable.).

With regard to the fees sought by plaintiffs for the services of Mr. Labbe and Dr. Luikart, this court finds the Corps' argument unpersuasive.  As stated above, it was reasonable for plaintiffs to continue working on the case until such time that the court approved the Consent Decree on September 30, 2014.  Further, Mr. Labbe's invoice was dated September 12, 2014, some eighteen days prior to the court approving the Consent Decree and included adequate descriptions of the work performed, such as the name of the project – "Cogswell Creek Flow and Diversion Analysis," the time spent on each task in the project, and the hourly rate charged for each task.  Prill Decl., Ex. A at 1.  Accordingly, this court finds

28 – OPINION AND ORDER

that the work performed by Mr. Labbe was adequately described, timely performed, and reasonably related to litigation against the Corps. As such, this court grants plaintiffs' fee request of $1,560 for the work of Mr. Labbe.

Similarly, Dr. Luikart's report provides adequate descriptions of the work performed, such as the date range of when the work was performed – "June to October 2014," as well as descriptions of the work performed – "research," "discussions," and "declaration/report writing and reviewing." Prill Decl., Ex. B at 1 (emphasis supplied). Critically, Dr. Luikart's work ran "to October." Thus, his work ceased the day after the court approved the consent decree on September 30, 2014 and he submitted his invoice to plaintiffs at the end of that same calendar month. As such, this court finds that the work performed by Dr. Luikart was adequately described, timely performed, and reasonably related to litigation against the Corps. Accordingly, plaintiffs' fee request of $5,900 for the work of Dr. Luikart is granted. In sum, plaintiffs are granted $10,628 in expert fees.

**IV.    Costs**

Plaintiffs seek $1,210.37 in costs[17]; including $400 for

---

[17] Plaintiffs originally sought $1,613.83 in costs, but later reduced that amount by twenty five percent, or $403.46, "to accommodate expenditures that may be inappropriate" because "it would take hours to document . . . each and every expenditure,

filing fees, $683.41 for travel/meals, $55.30 for legal research, $363.70 for printing, and $111.42 for mailing. Prill Decl., Ex. C.

The Corps challenges these costs, arguing that they are "inadequately described." Corps' Opp'n at 10. The Corps specifically argues that "there is no indication of what was purchased or printed, or whether it was related to the litigation" and courts also generally do not allow reimbursement for computer assisted-legal research. Id.

Costs are typically awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise. See Fed. R. Civ. R. 54(d); see also 28 U.S.C. § 2412. The expenses which may be taxed as costs are enumerated in 28 U.S.C. § 1920 and generally include any reasonable "out-of-pocket expenses ... 'that would normally be charged to a fee paying client.'" Nat'l Warranty Ins. Co., 2001 WL 34045734, *9 (quoting Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir.1994)); see also 28 U.S.C. § 2412(a)(1).

"Reasonable charges for computerized research may be recovered as attorneys' fees under [29 U.S.C.] § 1132(g)(2)(D) if separate billing for such expenses is the prevailing practice in the local community." Trustees of Const. Indust. v. Redland

at a potentially far greater cost to the Corps than the cost of the bill as a whole." Second Frost Decl. at 3.

Ins. Co., 460 F.3d 1253, 1258-59 (9th Cir. 2006). "Since it is plaintiff's burden to demonstrate that the compensation it seeks was for hours reasonably related to the litigation . . . no compensation should be awarded in connection with time entries that fail to fully identify the subject of the work performed." Inst. For Wildlife Protection, 2008 WL 4866063 at *16.

Copying charges are compensable under section 1920, if they are necessarily obtained for use in the case. Evanow v. M/V Neptune, 163 F.3d 1108, 1118 (9th Cir. 1998). The copies need not actually have been used as evidence to justify an award of costs, they need only have been "necessarily obtained" in the context of the litigation. Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc., 920 F.2d 587, 588 (9th Cir.1990 (per curiam)). Copying charges can also be a compensable non-overhead expense under section 1988 if the party seeking compensation documents that the charges pertain to matters before the court. West Virginia Hosp. v. Casey, 898 F.2d 357, 366 (3d Cir.1990).

Here, plaintiffs failed to submit accurate descriptions of the costs they allegedly incurred. Specifically, plaintiffs listed only "West Law" and "Pacer" under their "legal research" cost summary, "Mastercard – Frost" under the "court fees" and

"travel, meals and lodging"[18] summaries, and "copy log – Eugene"
and "postage log – Eugene" under the "postage and delivery" and
"reproduction/printing" costs.    Prill Decl., Ex. C.    These
descriptions inadequately demonstrate that the compensation
plaintiffs seek was reasonably related to the litigation and to
the Corps specifically.[19]

Moreover, rather than demonstrating that the costs
plaintiffs sought were reasonably related to the litigation and
Corps specifically, plaintiffs chose instead to reduce their
demand by twenty five percent to account for potentially
"inappropriate" costs because "it would take hours" to
accurately document "each and every expenditure" and would
result in a far greater cost to the Corps.    This court
disagrees.    "Timekeepers are under an affirmative obligation to
maintain accurate billing records contemporaneously, and time
spent in so doing is an overhead cost, not an expense taxable to
an opposing party."    Inst. For Wildlife Prot., 2008 WL 4866063
at *14.    Accordingly, because plaintiffs chose to reduce rather
cure their cost demand, it is unclear on the record before the
court whether the compensation plaintiffs seek was reasonably

---

[18] One of plaintiffs' "travel, meals and lodging" expenses from
July 28, 2014, totaling $10.50, lists "Andree Phelps expense
report" under the description of the expense.
[19] Plaintiffs also failed to demonstrate that separate billing
for computerized legal research expenses is the prevailing
practice in the local community.    Trustees of Const. Indust.,
460 F.3d at 1258-59.

related to the litigation with the Corps.  As such, this court denies plaintiffs' demand for costs.

## CONCLUSION

For the reasons set forth above, plaintiffs' Motion for Attorneys' Fees and Costs (ECF 138) is granted in part and denied in part.  Specifically, plaintiffs are granted $206,562 in attorneys' fees and $10,628 in expert fees.  Plaintiffs' motion for costs, however, is denied.

IT IS SO ORDERED.

DATED this _22_ day of January, 2016.


_____
THOMAS M. COFFIN
United States Magistrate Judge